IN THE MATTER OF: LARITA BELL, ELIZABETH BELL, KIMBERLY BECTON, AND SPENCER HILL, JUVENILES

No. 918DC843

(Filed 6 October 1992)

1. **Infants or Minors § 120 (NCI4th)— insufficient health care and food—failure to take children to day care—neglect— sufficiency of evidence**

   The trial court did not err in finding that respondent's children were neglected where the evidence tended to show that respondent did not ensure that her children received proper treatment from the county health department in that her two younger children had never been immunized and her six-month-old had never been to a doctor at all; she did not use her food stamps so as to keep an adequate supply of food in the house; she did not provide the children with any socialization or stimulation at home; she failed to take her children across the street to free day care on a regular basis; and respondent thus deprived her children of an opportunity for normal growth and development.

   **Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 24, 54.**

2. **Infants or Minors § 127 (NCI4th)— neglected children—order requiring children to attend day care appropriate**

   The trial court did not err in ordering neglected children to attend day care since the finding of neglect was clearly supported by the evidence; it was obvious that the day care program operated by DSS would be beneficial to the children; and the court's order was a warranted intrusion into the life of a family on the brink. N.C.G.S. § 7A-646.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children § 29.**

Chief Judge HEDRICK dissenting.

APPEAL by respondent-mother from order entered 29 May 1991 by *Judge Rodney R. Goodman* in LENOIR County District Court, Juvenile Section. Heard in the Court of Appeals 16 September 1992.

*Griffin & Griffin, by Robert W. Griffin, for Lenoir County Department of Social Services, petitioner-appellee.*

*Perry, Perry & Perry, by James S. Perry, for respondent-appellant.*

LEWIS, Judge.

The respondent-appellant, Joyce Tucker, is the mother of four children: Larita Bell, Elizabeth Bell, Kimberly Becton, and Spencer Hill, now aged seven, six, four, and two, respectively. On 25 April 1991 the Lenoir County Department of Social Services [DSS] filed petitions alleging that the children were neglected as defined in N.C.G.S. Section 7A-517(21). On 29 May 1991 the lower court found as a matter of law that they were neglected according to the statute. The court permitted Ms. Tucker to retain custody of her children, but ordered her to take them to day care and otherwise cooperate with the "protective supervision" of DSS. Ms. Tucker appeals from this order.

On appeal Ms. Tucker contends that the lower court erred in denying her motion to dismiss on the basis that DSS did not establish neglect by clear and convincing evidence. She also submits that the court erred in finding neglect, and in ordering her to take her children to day care.

According to the record, DSS began its investigation of the Tucker household in January 1991 upon receiving a report stating that the children had been left alone one night. The social worker, Ms. Coley, described for the court the conditions she found at the house at that time and in the ensuing months. The oldest child, Larita, was in school, but the three younger children stayed at home with their mother. Ms. Coley stated that the two youngest children had never been immunized against any childhood diseases, and Spencer, who was six months old at the time, had never been

to a doctor at all. Ms. Tucker did not keep an adequate supply of food in the house, and Ms. Coley reported a complete lack of milk, juice, and meat on some occasions. Several times Ms. Coley found Ms. Tucker asleep in the house with the children unsupervised. The children did not have any toys or crayons, and Ms. Tucker admittedly did not talk to the baby.

Ms. Coley made arrangements for the necessary immunizations and for free day care attendance at the Marvin B. Spence Day Care Center, located directly across the street from Ms. Tucker's residence. Although Ms. Tucker agreed that day care was a good idea, she failed to take her children on a regular basis. Even after Ms. Coley accompanied Ms. Tucker to the grocery store, Ms. Coley reported she would still find less than an adequate supply of food in the house and could get no explanations from Ms. Tucker.

On 25 April 1991 Ms. Coley filed four identical petitions alleging that the children were neglected. Each stated that:

[T]he above-named juvenile is a neglected juvenile as defined in G.S. 7A-517(21) in that: The juvenile does not receive proper care, supervision, or discipline from his/her parent in that: Lenoir Co. DSS is providing Individual and Family Adjustment Services to this family because after completing a thorough assessment of the family it was felt that these children were living in an environment which was considered high risk for neglect. As a preventive measure our agency provides day care services for the three youngest children at Marvin B. Spence Day Care Center. This service was needed in order for the children to receive adequate stimulation and socialization that they were not receiving at home. Ms. Tucker has repeatedly failed to make sure the children attend day care on a regular basis as recommended. The mother has also neglected to assure that the children receive medical attention such as immunizations and/or regular medical follow-up when needed. The mother also has a problem sustaining an adequate supply of food for the children from month to month.

Ms. Tucker first contends that the lower court erred in denying her motion to dismiss at the close of petitioner's evidence. Upon a motion to dismiss, the court must view the evidence in the light most favorable to the petitioner, giving the petitioner the benefit of any inference. *Price v. Tomrich*, 275 N.C. 385, 167 S.E.2d 766 (1969). The test is whether there is substantial evidence to support

petitioner's allegations. *In re Cusson*, 43 N.C. App. 333, 258 S.E.2d 858 (1979). In this case, the transcript of the trial reveals that petitioner's evidence was sufficient to withstand the motion to dismiss. The allegations of Ms. Coley certainly meet the test of substantial evidence. Thus, this Court finds that the lower court properly denied the motion to dismiss.

[1] Ms. Tucker also contends that the lower court erred in finding that the children were neglected. She argues that the court made an impermissible socio-economically based value judgment in deciding that the children were neglected. *In re Evans*, 81 N.C. App. 449, 344 S.E.2d 325 (1986) (socio-economically based value judgments will be overruled). We disagree. The lower court did not base its judgment on the economic status of Ms. Tucker. The finding of neglect stemmed from her reluctance to take advantage of the opportunities available to her for her children. She did not ensure that her children received proper treatment from the county health department, she did not use her food stamps so as to keep an adequate supply of food in the house, and she did not take full advantage of the free day care.

N.C.G.S. Section 7A-517(21) defines a neglected juvenile as:

A juvenile who does not receive proper care, supervision, or discipline from his parent, guardian, custodian, or caretaker, . . . or who is not provided necessary medical care or other remedial care recognized under State law, or who lives in an environment injurious to his welfare. . . .

N.C.G.S. § 7A-517(21) (Supp. 1991). Allegations of neglect must be proven by clear and convincing evidence. N.C.G.S. § 7A-635 (1989). In *In re Evans*, 81 N.C. App. 449, 344 S.E.2d 325 (1986), the Court noted that the quantum of proof necessary for termination of parental rights is different from that necessary for removal of the child from the home. *Id.* at 452, 344 S.E.2d at 327. Logically, then, even less proof would be necessary when the parent is permitted to retain custody.

In *In re Devone*, 86 N.C. App. 57, 356 S.E.2d 389 (1987), this Court found neglect where a mentally retarded fifteen year old was kept out of public school, and its special education programs, because his father insisted on educating his children at home. The Court noted that the child needed "additional stimulation outside the home," and that denial of the remedial care available in the

public schools constituted neglect according to N.C.G.S. section 7A-517(21). *Id.* at 58, 60, 356 S.E.2d at 390, 391. Importantly, the Court stated that "[t]o deprive a child of the opportunity for normal growth and development is perhaps the greatest neglect a parent can impose upon a child." *Id.* at 60, 356 S.E.2d at 391 (*quoting In re Huber*, 57 N.C. App. 453, 458, 291 S.E.2d 916, 919, *disc. rev. denied*, 306 N.C. 557, 294 S.E.2d 223 (1982)).

Similarly, in the case at hand the children are being denied the opportunity to participate in free day care, which the social worker believes is necessary for their "adequate stimulation and socialization." Instead, the children are kept at home, where they do not receive proper medical care, supervision, or adequate nutrition. The facts of this case are certainly sufficient to support a finding of neglect by clear and convincing evidence.

[2] Finally, Ms. Tucker argues that the lower court erred in ordering the children to attend day care. In their briefs the parties dispute whether day care is actually beneficial to the children. Each cites several authorities who have researched the effects of day care on young children. However, this Court will not seek to analyze the beneficial or detrimental effects of the day care system as a whole. Rather, we conclude that in this case day care is an appropriate remedy. It can only be beneficial to temporarily remove the children from an environment where they were receiving inadequate care, and where the mother did not even talk to the baby, and to place them in a day care center for 7½ hours each day.

The best interests of the children is our foremost consideration here. The *Devone* Court stated that "[j]udicial intervention is authorized because the welfare and best interest of the child is always treated as the paramount consideration." 86 N.C. App. at 61, 356 S.E.2d at 391 (citation omitted); *see In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) (in case involving termination of parental rights upon finding of neglect, a "determinative factor" is the best interests of the child). If an adult chooses to neglect herself or abuse herself, privately, that is her choice. This matter, however, concerns children, indeed, infants. Our youth is our most precious asset in this state and they must be protected and nurtured. We find this case one of warranted intrusion into the life of a family on the brink. The finding of neglect is clearly

supported by the evidence, and it is obvious that the day care program operated by DSS would be beneficial to these children.

According to N.C.G.S. section 7A-646,

> the initial approach [to the disposition of juvenile actions] should involve working with the juvenile and his family in their own home so that the appropriate community resources may be involved in care, supervision, and treatment according to the needs of the juvenile. Thus, the judge should arrange for appropriate community-level services to be provided to the juvenile and his family in order to strengthen the home situation.

N.C.G.S. § 7A-646 (1989). The lower court has followed the recommendation of this statute in fashioning the remedy in this case. The court did not deny Ms. Tucker custody of her children. It merely ordered her to take her children to free day care, and provided that even this would not be required if she and DSS later agreed that day care was unnecessary. The court also ordered Ms. Tucker to continue participating in an Early Intervention Program and a Homemaker Program, and to otherwise cooperate with the "protective supervision" of DSS. This Court agrees that these remedies were reasonable and appropriate in this case.

Affirmed.

Judge WYNN concurs.

Chief Judge HEDRICK dissents.

Chief Judge HEDRICK dissenting.

As her second assignment of error respondent contends the trial court committed reversible error in finding that the minor children were neglected. I agree.

The purpose of an adjudicatory hearing is to determine the "existence or nonexistence of any of the conditions alleged in a petition." G.S. 7A-631. At the hearing, "the allegations in a petition alleging . . . neglect . . . shall be proved by clear and convincing evidence." G.S. 7A-635. "If the judge finds that the allegations have not been proven, he shall dismiss the petition with prejudice . . . ." G.S. 7A-637.

G.S. 7A-517(21) defines a "neglected juvenile" as follows:

A juvenile who does not receive proper care, supervision, or discipline from his parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care or other remedial care recognized under State law, or who lives in an environment injurious to his welfare, or who has been placed for care or adoption in violation of law . . . .

In the present case, the testimony presented by Mrs. Coley tends to show that the allegations she made in the petition concern conditions which she found existed in respondent's home at the time she began her investigation in January 1991. Her testimony does not indicate that these conditions existed at the time she filed the petition in April 1991 or at the time of the hearing. In fact, the greater weight of her testimony suggests that through the intervention of DSS, these conditions were being remedied as of the date of the petition.

In his closing argument to the court, counsel for DSS stated:

Your Honor, we would certainly admit that this is not one of the worst neglect cases that we have ever brought, it is a marginal case—its a case where the mother has worked with Social Services to some extent to try [to] improve conditions in the home . . . .

The trial judge apparently agreed with counsel to a certain extent as is evidenced by his order allowing respondent to retain custody of the children. However, the trial judge did find, by clear and convincing evidence, that the children were "neglected" pursuant to the statute and in so doing, placed respondent in a detrimental position for protecting her parental rights in the future.

I hold the trial judge's findings that respondent's children were "neglected" were not supported by clear and convincing evidence in the record. Thus, I vote to reverse the order adjudicating respondent's minor children to be neglected pursuant to G.S. 7A-517(21).