In the Matter of: D.B., Jr., Minor Child.
No. COA07-928
Court of Appeals of North Carolina
Filed December 18, 2007
This case not for publication
E. Marshall Woodall and Duncan B. McCormick, for petitioner-appellee.
Pamela Newell Williams for Guardian ad Litem.
Betsy J. Wolfenden, for respondent-appellant.
BRYANT, Judge.
Respondent-father D.B., Sr.,[1] appeals from an order adjudicating his eight-year-old son, D.B., Jr., a neglected juvenile and placing the child in the legal custody of the Harnett County Department of Social Services ("DSS"). For the reasons stated we affirm.
On 16 March 2007, DSS filed a petition asserting that D.B., Jr., was a neglected juvenile within the meaning of N.C. Gen. Stat. § 7B-101(15) (2005). The petition stated that respondent-mother had been convicted of violating the state's compulsory school attendance law in June 2006, after failing to send the minor child to school regularly during the 2005-06 school year. N.C. Gen. Stat. § 115C-380 (2005). DSS further alleged that respondent-mother was incarcerated on 16 March 2007 for violating her probation, based upon the minor child's numerous unexcused absences and tardies during the 2006-07 school year. The petition listed respondent-mother's address in Spring Lake, North Carolina, and respondent-father's address in Charlotte, North Carolina. The district court granted DSS nonsecure custody of the child and authorized a placement in respondent-father's home. DSS placed the child with his father and requested a home study by the Mecklenburg County Department of Social Services ("MCDSS"). Respondent-father enrolled the child in fourth grade at Lebanon Road Elementary School in Charlotte.
After a hearing held 27 April 2007, the district court adjudicated D.B., Jr., a neglected juvenile, finding that he had lived in an environment injurious to his welfare and had been denied proper care and supervision by his parents. N.C. Gen. Stat. § 7B-101(15) (2005). The court found that DSS had notified respondent-father of both respondent-mother's failure to school the minor child and reports of "domestic violence, substance abuse, and inappropriate discipline of the juvenile" in respondent-mother's home, which dated "as far back as July 29, 2004[.]" Although respondent-father had enrolled the child in the Mecklenburg County School System during the summer of 2006, respondent-mother "refused or failed" to return the child to his father after an August 2006 visitation. The court further found that respondent-father "was aware of the environment in which the juvenile was living while in the care of the mother . . . [and] of the mother's failure to send the juvenile to school during the school years of 2005-2006 and 2006-2007." The court concluded that the child was neglected due to (1) his exposure to "an environment injurious to his welfare while in the care of his mother as a result of issues of domestic violence with her boyfriend[,]" and (2) the denial of "proper care and supervision by his parents when he was allowed to be absen[t] from school . . . during the past two years and when he was allowed to live in the home of the mother[.]"
At disposition, the court found that respondent-father was employed and shared an apartment with his girlfriend, who was also employed and expecting their child. The court noted MCDSS' prior approval of respondent-father as a temporary placement for the child based on a kinship assessment, but found that the child's best interest would be served by remaining in DSS custody pending the completion of a full home study. The court awarded DSS legal custody of the child, authorized his continued placement with respondent-father, and ordered respondent-father to enter into a Family Services Case Plan with DSS, to include counseling for the child.
On appeal, respondent-father challenges the court's finding and conclusion that he neglected the minor child. He notes that the petition filed by DSS raised only allegations regarding respondent-mother's actions, and that he was sending the child to school at the time of the adjudication hearing. While conceding his awareness of respondent-mother's exposure of the child to an injurious home environment and her failure to send the child regularly to school during the 2005-06 and 2006-07 school years, respondent-father argues that such "'awareness', without anything more, is insufficient to support the trial court's conclusion that [he] neglected [the child]." Respondent-father also takes exception to the court's finding that he "allowed" the child to be absent from school and to live with respondent-mother. Given the mother's refusal to return the child to him in August of 2006, as well as the concern he expressed to DSS and the school regarding his son's circumstances, respondent-father insists he did not "engage in malfeasance or nonfeasance" toward the child amounting to neglect.
We review an adjudication of neglect under N.C. Gen. Stat. § 7B-807 (2005) to determine whether the district court's findings of fact are supported by clear and convincing evidence, and whether the court's findings of fact support its conclusions of law. In re Pittman, 149 N.C. App. 756, 763-64, 561 S.E.2d 560, 566 (2002) (citing In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000)). Findings of fact which are not challenged by a properly briefed assignment of error are deemed to be supported by competent evidence and are binding on appeal. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). The determination that a child is neglected based upon a given set of facts is a conclusion of law subject to de novo review. In re J.S.L., 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006); In re Helms, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997).
The Juvenile Code defines a neglected juvenile, in part, as one "who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; . . . or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2005). In assessing a child's status as neglected, "the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent." In re Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984). Moreover, the district court must determine whether the child was neglected at the time the juvenile petition was filed, rather than at the time of the hearing. In re A.B., 179 N.C. App. 605, 609, 635 S.E.2d 11, 15 (2006). "The question this Court must look at on review is whether the court made the proper determination in making findings and conclusions as to the status of the juvenile." In re B.M., __ N.C. App. __, __, 643 S.E.2d 644, 647 (2007).
We hold that the uncontested findings support the district court's conclusion that D.B., Jr., was neglected within the meaning of N.C. Gen. Stat. § 7B-101(15), in that he was not receiving proper care and supervision from his parents and lived in an environment injurious to his welfare. During the period relevant to the adjudication, the minor child was denied regular schooling for two consecutive school years and exposed to violence in the home as a result of the custody arrangement between his parents. Moreover, respondent-father concedes he was aware of these conditions. This Court has held "that a child who receives proper care and supervision in modern times is provided a basic education[,]" and that a child who is denied schooling is neglected within the meaning of the Juvenile Code. In re McMillan, 30 N.C. App. 235, 238, 226 S.E.2d 693, 695 (1976) (construing former N.C. Gen. Stat. § 7A-278(4)). Whatever distinction respondent-father would draw between his awareness of the child's circumstances and the finding that he "allowed" the circumstances to exist, we believe that such awareness, over a period of years, was sufficient to support the conclusion that both parents neglected the child. Compare In re A.S., __ N.C. App. __, __, 640 S.E.2d 817, 819 (affirming the conclusion that the father had neglected his children, where he was aware of the mother's "violent, erratic behaviors" in the home, and had previously called law enforcement to address her behavior), appeal dismissed, 361 N.C. 427, 648 S.E.2d 203 (2007) with In re J.A.G., 172 N.C. App. 708, 715-16, 617 S.E.2d 325, 329 (2005) (reversing the conclusion that the mother had neglected her child, where the underlying adjudication of neglect arose from a single abusive act by the father outside the mother's presence and "there was no evidence presented indicating respondent knew or reasonably should have known the father would harm [the child]").
Respondent-father notes that the allegations in the petition filed by DSS concerned only the acts of respondent-mother. As discussed above, however, the focus of a juvenile neglect proceeding is the child's status, not the respective culpability of each named respondent. In re B.M., __ N.C. App. at __, 643 S.E.2d at 647. A juvenile petition need only "allege the facts which invoke jurisdiction over the juvenile." N.C. Gen. Stat. § 7B-402 (2005). Inasmuch as D.B., Jr., was living with respondent-mother during the period at issue, his neglected status was properly established by reference to the actions of his caretaker. To the extent respondent-father assigns error to the Guardian ad Litem's argument that he failed to initiate custody proceedings against respondent-mother, we find nothing in the order to suggest that the court based its adjudication on this argument. Accordingly, we overrule this assignment of error.
The record on appeal includes additional assignments of error which are not addressed by respondent-father in his brief to this Court. Pursuant to N.C.R. App. P. 28(b)(6), we deem them abandoned.
Affirmed.
Chief Judge MARTIN and Judge McCULLOUGH concur.
Report per Rule 30(e).
NOTES
[1] Initials are used throughout the opinion to protect the identity of the juvenile.