WEST v. MARKO

[141 N.C. App. 688 (2001)]

———————————

JEFFREY D. WEST, Plaintiff v. DIANNA L. MARKO, Defendant

No. COA99-1596

(Filed 16 January 2001)

**Child Support, Custody, and Visitation— custody—modification of prior order—substantial change of circumstances— best interests of child**

The modification of a child custody order was affirmed where the trial court erroneously concluded that it did not need to make findings that there had been a substantial change of circumstances affecting the welfare of the child, but negated that erro-

neous conclusion by making the findings, which were supported by the evidence.

Judge FULLER concurring.

Judge GREENE dissenting.

Appeal by plaintiff from judgment entered 22 July 1999 by Judge James M. Honeycutt in District Court, Iredell County. Heard in the Court of Appeals 7 November 2000.

*Baker & Baker, PLLC, by Laura Snider Baker, for plaintiff-appellant.*

*No brief filed for the defendant-appellee.*

WYNN, Judge.

This child custody case began with the filing of a complaint by Jeffrey D. West in which he alleged that he and Dianna L. Marko were the child's parents. He served that complaint on Ms. Marko by certified mail addressed to her former residence in North Carolina. Apparently, that mailing was forwarded to her at her new residence in Wisconsin, and she acknowledged receiving the complaint but later failed to answer it. Accordingly, the clerk of court entered default against her on 9 July 1996.

Following the entry of default, District Court Judge Jack E. Klass conducted a custody hearing in Ms. Marko's absence. At the hearing, the evidence before the trial court included Mr. West's complaint that asserted that he and Ms. Marko were the parents of the minor child. Since the entry of default deemed that allegation admitted, the trial court made no explicit finding of fact that he was indeed the child's father. We find no evidence that Mr. West offered independent evidence at the custody hearing to show that he was the biological father of the child. Instead, he presented witnesses who testified on his fitness as a parent. Under an order dated 5 August 1996 *nunc pro tunc* 23 July 1996, Judge Klass found that the child's best interest was to be in Mr. West's custody. In response, Ms. Marko delivered the child from their residence in Wisconsin to Mr. West.

Immediately thereafter, Ms. Marko moved under N.C.R. Civ. P. 55(d) to set aside the 9 July 1996 entry of default, and to vacate or stay the custody order of 5 August 1996. District Court Judge Robert W. Johnson granted temporary visitation rights to Ms. Marko and, by

an order filed 13 November 1996, set aside the entry of default against her and granted her the opportunity to answer the custody complaint. Ms. Marko then filed an answer and counterclaim, seeking permanent and exclusive custody of the minor child.

At a hearing on the matter on 9 December 1996, District Court Judge James M. Honeycutt denied Mr. West's motion to dismiss Ms. Marko's answer and counterclaim. He also orally granted Ms. Marko's motion to vacate the 5 August custody order, but this oral order was never reduced to writing and entered in accordance with N.C.R. Civ. P. 58. In a written order filed 10 March 1997, Judge Honeycutt awarded custody of the child to Ms. Marko. Mr. West appealed to this Court.

In *West v. Marko*, 130 N.C. App. 751, 504 S.E.2d 571 (1998) ("*West I*"), this Court held that since the trial court only set aside the entry of default but failed to also vacate the 5 August 1996 custody order, that order remained a binding and enforceable order. Moreover, in *West I*, this Court held that the 5 August 1996 order was a valid custody order that could only be modified by showing a substantial change of circumstances affecting the welfare of the child, and since the order dated 10 March 1997 did not make any findings regarding a change of circumstance, that order had to be vacated and the 5 August 1996 order remained in effect.

Immediately following this Court's opinion in *West I*, Ms. Marko moved for modification of the 5 August 1996 custody order, based on a substantial change of circumstances affecting the welfare of the child. At the hearing on that motion beginning 1 February 1999, Judge Honeycutt heard the testimony of both parties, several witnesses, and other evidence. Judge Honeycutt made several detailed findings of fact and concluded that the best interests of the child would be served by awarding custody to Ms. Marko. Mr. West appealed to this Court.

---

On appeal, Mr. West argues that the trial court erred in applying the "best interests of the child" test because this Court, in *West I*, held that the 5 August 1996 order could only be modified by a showing of a change of circumstances. We conclude that the trial court, in its latest custody order, did in fact apply the change of circumstances test in modifying the earlier custody order.

Permanent custody orders can only be modified by first finding that there has been a substantial change of circumstances affecting

the welfare of the child. *See, e.g., Metz v. Metz,* 530 S.E.2d 79, 80 (N.C. App. 2000). Once the trial court makes the threshold determination that a substantial change has occurred, the trial court then must consider whether a change in custody would be in the best interests of the child. *Ramirez-Barker v. Barker,* 107 N.C. App. 71, 77, 418 S.E.2d 675, 678 (1992), *overruled on other grounds by Pulliam v. Smith,* 348 N.C. 616, 620, 501 S.E.2d 898, 900 (1998). The change of circumstances test is a harder standard to meet than the best interests of the child test, as it requires a two-step inquiry.

As long as there is competent evidence to support the trial court's findings, its determination as to the child's best interests cannot be upset absent a manifest abuse of discretion. *King v. Allen,* 25 N.C. App. 90, 92, 212 S.E.2d 396, 397, *cert. denied,* 287 N.C. 259, 214 S.E.2d 431 (1975). While a trial court's findings of fact are conclusive on appeal if there is evidence to support them, *see Hunt v. Hunt,* 85 N.C. App. 484, 488, 355 S.E.2d 519, 521 (1987), the trial court's conclusions of law are reviewable *de novo. See Browning v. Helff,* 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000).

In the case at bar, the trial court concluded:

7. That the Court *may* modify the Order of [5 August 1996] on the basis of its determination of *the best interest of the minor child, without the need for finding of a substantial change in circumstances.* (emphasis added.)

Under the holding of *West I,* it was error for the trial court to apply the best interests standard to this case. However, the trial court also made findings of fact showing that there had been a substantial change of circumstances affecting the welfare of the child. Specifically, the trial court found:

13. . . . The court finds that there has been a *substantial change of circumstances* since the condition of the minor child is drastically different than the facts that were given to the Honorable Jack E. Klass. . . . That the Defendant has taken a job at a restaurant which has increased her ability to care for the minor child and allows her to be with the minor child and her other children. That the Defendant has made substantial improvements in her relationship with the minor child because she has arranged her work schedule to allow her to be home when the minor child is with her in the mornings and again when she returns home from pre-kindergarten in the afternoon. . . . (emphasis added).

14. . . . That the Court finds that there has been a *change of circumstances* since the Plaintiff has had various women residing with him and the minor child . . . . (emphasis added).

The trial court also made numerous findings of fact regarding how each parent treated the child and each other; regarding educational opportunities and medical care provided by each parent; regarding the parents' incomes; and noting that the minor child had spent the vast majority of the past four years living with her mother.

Moreover, we find that there is competent evidence supporting the trial court's findings of fact that there had been a substantial change of circumstances in this case. The parties and several witnesses testified about the minor child's care, educational opportunities, babysitters, and the amount of time each parent was able to spend with their daughter. Further, the witnesses testified about each family's living conditions, including the presence or absence of siblings and other grown-ups in the home. Each of these factors naturally affects the child's welfare. In particular, we find that the evidence supports the trial court's findings that there has been a substantial change of circumstances since the 5 August 1996 custody order, especially in regards to the relationship between the child and each parent, and the stability of each home. We find no abuse of discretion in the trial court's findings of fact.

In short, while the trial court erred under *West I* in applying the best interests standard to this case, its explicit findings that there had been a substantial change of circumstances affecting the welfare of the child support the conclusion of law modifying the 5 August 1996 custody order. Significantly, our own review of the evidence and findings of fact support such a conclusion. *See Rowe v. Rowe*, 52 N.C. App. 646, 661, 280 S.E.2d 182, 191 (1981), *aff'd in relevant part*, 305 N.C. 177, 287 S.E.2d 840 (1982) (wherein this Court concluded as a matter of law that a substantial change of circumstances had occurred in a post-divorce proceeding, even though the trial court concluded otherwise). Having already found that the trial court's findings of fact were supported by the evidence, and among these facts the trial court found a substantial change of circumstances, we conclude as a matter of law that a change of circumstances occurred.[1]

---

1. In open court, Judge Honeycutt stated, "Court would conclude as a matter of law from the findings that the Defendant has shown substantial and material changes of circumstance affecting the welfare of the minor child such that custody should be changed . . . ." While Judge Honeycutt did not reduce this conclusion to writing in the written custody order, this statement lends more support to our treatment of Judge

**WEST v. MARKO**

[141 N.C. App. 688 (2001)]

Finally, we point out for clarification in *West I* that the 5 August 1996 order was not a default judgment. In *West I*, this Court held that because the trial court set aside only the entry of default, the custody order of 5 August remained in effect. In so holding, this Court must have relied upon the rationale that the 5 August judgment was not predicated on the allegations deemed admitted by the entry of default. Indeed, when an entry of default is set aside, a resulting default judgment which is predicated on the entry of default cannot stand. *See House of Style Furniture Corp. v. Scronce*, 33 N.C. App. 365, 369-70, 235 S.E.2d 258, 261 (1977) (holding that when there is a jurisdictional defect in an entry of default, the default judgment predicated on that entry of default cannot stand); *Byrd v. Mortenson*, 308 N.C. 536, 540, 302 S.E.2d 809, 812 (1983) (remanded for a determination of whether there was "good cause" to set aside an entry of default under N.C.R. Civ. P. 55(d), and vacating the default judgment against the defendants in order for the trial court to make further findings of fact about whether the defendants should be allowed additional time to file their answer). *See also P & B Land v. Klungervik*, 751 P.2d 274, 276-77 (Ct. App. Utah 1988) (holding that no default judgment may be entered unless default has been entered); *Jacobs v. Sheriff*, 837 P.2d 436, 437 (Nev. 1992) (questioning whether a valid default judgment could be entered in the absence of a valid default).

Moreover, contrary to the dissenting opinion, our reading of *West I* does not overrule its holding; rather, we hold that the custody judgment in *West I* must have been an *independent* judgment, not a *default* judgment.[2] Simply put, when the *default* is taken from a *default* judgment, the remaining judgment, which is by definition dependent on that *default*, cannot stand. Indeed, an entry of default serves two purposes in support of a default judgment. First, the entry deems the allegations in the complaint admitted. In so doing, the plaintiff is relieved of the obligation of setting forth proof of his allegations to obtain a default judgment. Second, the entry denies the

Honeycutt's findings of fact to support the conclusion of law that a change of circumstances had occurred in this case.

2. The dissent notes that because there are two different standards, "it does not follow" that setting aside an entry of default sets aside the default judgment. However, the reason there are two different standards is because the entry of default is based only on the failure of a party to answer, which allows the clerk of court to enter default. The standard to set that aside is less stringent than the standard to set aside a default judgment, which is based on the deemed admissions of the *entry of default*. Thus, if a party seeks only to set aside the default judgment but not the entry, the burden is more stringent because the *entry of default* supports that judgment. On the other hand, setting aside the *entry of default* robs a default judgment of its support.

responding party the opportunity to answer the complaint. *See Spartan Leasing, Inc. v. Pollard*, 101 N.C. App. 450, 400 S.E.2d 476 (1991) (holding that an entry of default allows the trial court to treat the plaintiff's allegations as true and prevents the defendant from filing an answer or otherwise defending on the merits of the case). Thus, when an entry of default is set aside, a default judgment based on allegations that are deemed admitted must also be set aside as its foundation of proof has been stripped.

In this case, the custody order of 5 August 1996 was not designated as a default judgment; however, the records on both appeals indicate that Mr. West relied upon the deemed admissions of his complaint to claim rights as a biological father. In his complaint, Mr. West alleged that he and Ms. Marko were the parents of the child. That allegation was deemed admitted by the entry of default; but, upon that entry being set aside, that admission was set aside. Manifestly, neither the present record on appeal nor the one before the Court in *West I* show that Mr. West presented any independent proof that he was the biological father of the child. Without such proof, the trial court lacked subject-matter jurisdiction to accord him a custody hearing as a biological parent. *See* N.C. Gen. Stat. § 50-13.1 (1999) (to gain custody of a child, whether temporary or permanent, a party must show some right to do so); *Petersen v. Rogers*, 337 N.C. 397, 406, 445 S.E.2d 901, 906 (1994) (holding that there are limits on who may bring an action for custody, and that N.C. Gen. Stat. § 50-13.1 is not intended to confer upon strangers the right to seek custody of children unrelated to them). Nonetheless, while the question of subject matter jurisdiction may be raised at any time, because we uphold the trial court's change of custody order on the grounds that it made sufficient findings to support a modification of the 5 August 1996 order, we do not further address the issue of whether the 5 August 1996 custody order was predicated on the entry of default. *See In re Spivey*, 345 N.C. 404, 480 S.E.2d 693 (1997) ("It is well established . . . that a challenge to the trial court's subject matter jurisdiction may be made at any time, even on appeal to this Court.")

In sum, Judge Honeycutt made findings of fact that there had been a substantial change of circumstances affecting the welfare of the minor child. While he erroneously concluded that he did not need to make these findings, the fact that he actually did so negates any effect of his erroneous conclusion. Since the trial court applied the proper standard by making findings regarding a change of circumstances, we affirm the decision to modify the earlier custody order.

**WEST v. MARKO**

[141 N.C. App. 688 (2001)]

Affirmed.

Judge FULLER concurs in a separate opinion written prior to 31 December 2000.

Judge GREENE dissents.

FULLER, Judge, concurring.

I join in the majority opinion. However, I write separately for emphasis.

The trial court's initial custody order, awarding custody to the father, was the result of a hearing at which neither the mother nor the child were present. The court did not appoint a guardian ad litem to represent the interests of the child. The only evidence received by the court was presented by the father. Although the custody order was not technically denominated a default judgment, it was, in effect, a result reached by default, since the court heard only one side of the dispute.

Even in suits involving competent adults, our jurisprudence disfavors default judgments, believing that justice is more likely to result from a full, fair adversarial proceeding. *See, e.g., Estate of Teel v. Darby,* 129 N.C. App. 604, 607, 500 S.E.2d 759, 762 (1998) ("[P]rovisions relating to the setting aside of default judgments should be liberally construed so as to give litigants an opportunity to have a case disposed of on the merits."). In some instances, where parties sit on their rights, we allow dollars or widgets to go by default. However, our courts should go the extra mile to insure that custody of our children *does not* go by default. *See Qurneh v. Colie,* 122 N.C. App. 553, 559, 471 S.E.2d 433, 436 (1996) ("As a policy matter, issues such as custody should only be decided after careful consideration of all pertinent evidence in order to ensure the best interests of the child are protected.").

One way to protect the child's welfare is for the trial judge, as an exercise of discretion, pursuant to N.C.R. Civ. P. 17(b), to appoint a guardian ad litem to insure that a child's interests are adequately investigated and presented to the court. *See, e.g., Van Every v. McGuire,* 125 N.C. App. 578, 481 S.E.2d 377 (1997), *aff'd,* 348 N.C. 58, 497 S.E.2d 689 (1998) (approving trial court's decision to appoint guardian ad litem to represent minor child during custody proceeding). In short, to the extent possible, child custody determinations

should be based upon consideration of the best available evidence, and should not be based merely upon deemed admissions or one parent's perspective.

In addition, when exigencies of schedulely make ex parte proceeding unavoidable, our case law has given the trial judge an additional tool to protect the child's welfare in subsequent hearings. For this Court has clearly stated that it is permissible for a trial court to find a substantial change in circumstances based on any facts pertinent to the custody issue that were not disclosed to the court at the original custody hearing. *See Newsome,* 42 N.C. App. at 425-26, 256 S.E.2d at 854-55. This is surely true in cases where the original judgment was a default judgment, or, in cases such as this, where the original judgment was based on evidence presented by only one parent.

Regardless of the stage of the custody dispute, and taking into account necessary legal procedures, our ultimate concern is, and must be, *the child's best interest.* Here, application of either the *best interest of the child* standard or the *substantial change in circumstances* standard would lead to the same conclusion. Accordingly, I vote with the majority that the child should be placed with the mother.

GREENE, Judge, dissenting.

I respectfully dissent because I believe the trial court, in Judge Honeycutt's 22 July 1999 order, applied a best interests test in determining the custody dispute. I, therefore, would reverse the order of the trial court.

I

As noted by the majority, a permanent child custody order can be modified only upon a showing of a substantial change in circumstances affecting the welfare of the child. *Pulliam v. Smith,* 348 N.C. 616, 619, 501 S.E.2d 898, 899 (1998). Because the 5 August 1996 custody order was a permanent order, *West v. Marko,* 130 N.C. App. 751, 756, 504 S.E.2d 571, 574 (1998), its modification could not occur upon application of a best interests of the child test.

In this case, Judge Honeycutt concluded the 5 August 1996 order entered by Judge Klass was a temporary order and could be modified

on the basis of redetermining the best interests of the child.[3] On that basis, Judge Honeycutt then modified the 5 August 1996 order and gave custody to Ms. Marko. That was error and requires the 22 July 1999 order be reversed and remanded. On remand, the trial court must address Ms. Marko's motion for a change in custody and apply the "change of circumstances" standard. Because of the substantial lapse of time since the entry of the last order, the parties may offer new evidence.

## II

I note the majority "point[s] out for clarification" that in *West I* we held the 5 August judgment "was not predicated on the allegations deemed admitted by the entry of default." Although this is *dicta*, it nonetheless constitutes a clear misreading of *West I* and I feel compelled to address the matter.

This Court in *West I* held the 5 August 1996 order was "binding and enforceable," even if entered as a default judgment and predicated on the entry of default. *West*, 130 N.C. App. at 755, 755 n.1, 504 S.E.2d at 573, 573 n.1. Thus, it does not follow, as the majority suggests, that the setting aside of an entry of default requires the striking of the default judgment. Indeed, *West I* clearly held contrary to the position of the majority, *West*, 130 N.C. App. at 754-55, 504 S.E.2d at 573 ("it does not follow" that the setting aside of the entry of default mandates setting aside the default judgment, as there are two different standards), and this panel is bound by that holding.

---

3. I acknowledge there is some language in Judge Honeycutt's order noting "there has been a substantial change of circumstances." This finding, however, read in context, does nothing more than indicate a disagreement with the facts found by Judge Klass. Judge Honeycutt was bound by the order entered by Judge Klass, including the findings of fact included in that order. Accordingly, it was not in the province of Judge Honeycutt to reject the findings of Judge Klass. Any inadequacy of Judge Klass's findings were matters to be addressed on an appeal from Judge Klass's order. In proper context, therefore, there are no findings in Judge Honeycutt's order suggesting a change in the circumstances of the child between the time of Judge Klass's order (whether or not reflected in that order) and the time of Judge Honeycutt's order, the relevant inquiry. Even assuming such findings, there are no findings that such changes have had any affect on the welfare of the child. *Browning v. Helff*, 136 N.C. App. 420, 424-25, 524 S.E.2d 95, 98-99 (2000) (in order to modify child custody order, there must be a showing that change in circumstances affected the welfare of the child).